SHORTESS, Justice Ad Hoc *.
Carlos A. Delgado and Rubin Marichal (defendants) were charged by separate bills of information with knowingly and intentionally possessing marijuana with the intent to distribute, a violation of La.R.S. 40:967(A)(1). Defendants filed motions to suppress, and evidentiary hearings were held and completed on January 19, 1981. The trial judge denied the motions. On March 31, 1981, defendants withdrew their pleas of not guilty and pled guilty, reserving their rights to appeal on the suppression issue. State v. Crosby, 338 So.2d 586 (La.1976). Each was sentenced to pay a fine of $15,000.00 plus costs, and to serve ten years in custody of the Louisiana Department of Corrections. They have both appealed. FACTS
On January 14, 1980, between 9:30 and 10:00 p. m., Deputy Roy Fontaine of the Plaquemines Parish Sheriff’s Office received a call from someone who told him there was a trawl boat on the west bank of the Mississippi River in the Triumph area which was probably loaded with marijuana. Fontaine and his supervisor, Inspector George Martinez proceeded to the area to investigate. They noticed a large shrimp boat apparently tied up close to the west bank by some willow trees. They kept the vessel under surveillance for a couple of hours from the parking lot of Mothe’s Funeral Home. While watching, they observed a suspicious black pick-up truck and several people who were going to and from the boat and truck, apparently unloading it.
Around 11:00 p. m., Martinez decided to call the U.S. Customs Service, Treasury Department, for advice. An agent named Steve came to the surveillance area next to Mothe’s. After watching for a short while, Steve decided to get Coast Guard assistance. He, Fontaine, and several Customs agents went to Venice where a Coast Guard vessel was waiting. During this time, it was learned that the shrimp boat was registered as M/V AQUARIAN SEA. They proceeded up the river and as they neared the AQUARIAN SEA one of the Coast Guard officers signaled to it with a bullhorn with words similar to, “AQUARIAN SEA— stand by for Coast Guard search.” With that warning, two men jumped overboard. One man moved toward the pilot house. All this movement took place notwithstanding additional Coast Guard instructions to stay where they could be seen. Two Customs agents, two Coast Guard investigators, and Deputy Fontaine boarded the vessel armed with shotguns and pistols. While boarding they detected a very strong odor of marijuana, which prompted a search of the vessel’s ice hold. Ultimately, these authorities recovered 1,072 bales of marijuana which weighed approximately 64,000 pounds.
Appellants present two issues for review:
1. Did the warrantless search of this vessel violate Article 1, Section 5, of the Constitution of the State of Louisiana of 1974 and the Fourth Amendment of the U.S. Constitution?
2. Can the search of the vessel be upheld because of the participation of Customs agents and Coast Guard officers?
ISSUE NO. 1
The Fourth Amendment of the U.S. Constitution gives protection against unreasonable searches and seizures.[1] Warrantless searches are per se unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In order to clothe this search with constitutional color, it became the State’s burden to establish some exception to the Fourth Amendment’s warrant requirement.
Appellants argue that the only information to establish that there was contraband on the vessel was obtained by Deputy Fon- *9 taine from an informer who said there was “probably” marijuana on the vessel. The State concedes that there was no showing made that the informer was credible or that his information could be considered reliable. Spinelli v. U. S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); State v. Richards, 357 So.2d 1128 (La.1978). Here, the information given by the informer only resulted in the surveillance of the AQUARIAN SEA. During that surveillance a suspicious black truck and three men were sighted conducting some sort of unloading operation on the levee near the vessel late at night. As the Coast Guard vessel approached the AQUARIAN SEA and after the warning of imminent boarding was made, two men jumped into the river [2]. A third person sought refuge in the pilot house. At this point, had Deputy Fontaine been armed with sufficient facts to justify his warrantless search under the exigent circumstance guidelines as set forth in Carroll v. U. S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and its progeny?
Late-night unloading and an unusual unloading site certainly created sufficient suspicion to permit Fontaine to approach the vessel for a closer look. These factors, together with the response of the vessel’s occupants when advised of the boarding, and the overwhelming odor of marijuana detected when the vessel was boarded, we feel gave Fontaine probable cause to search without a warrant.
ISSUE NO. 2—Participation of Customs and Coast Guard Officials
A. Customs Agents
The suspicions of the Plaquemines deputies resulted in Customs participation. A Customs agent came to the surveillance site near Mothe’s Funeral Home, and after viewing the vessel felt that a document search was in order. Authority for documentation searches is found at 19 U.S.C. 1581(a)[3], which seems to grant Customs unlimited powers, but it has been held that searches and seizures made pursuant to this statute must meet the general standard of reasonableness imposed by the Fourth Amendment. U. S. v. Freeman, 579 F.2d 942 (11th Cir. 1978). Appellate counsel in oral argument before us strenuously argued that the border search exception was inapplicable here. Almeida-Sanchez v. U. S., 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). We concur. The record does not justify its application because we do not know where this vessel came from, and we will not speculate as to whether it came from international waters. In U. S. v. Villamonte-Marquez, 652 F.2d 481 (1981), the U.S. Fifth Circuit discussed application of the “reasonable suspicion” standard mandated by the Fourth Amendment before searching a vessel in inland waters. It restated the test it had earlier formulated in U. S. v. D’Antignac, 628 F.2d 428 (11th Cir. 1980) as follows:
The constitutionality of the boarding [of a vessel in inland waters under Section 1581(a) ] turns ... on one of the following two principles: (1) a border search; or (2) a limited investigatory stop based upon a reasonable suspicion of law violation. 628 F.2d at 433.
Did Customs authorities have a reasonable suspicion of a law violation so as to justify the initial boarding of the vessel? These facts are relevant to this inquiry: (1) a surveillance indicated unloading operations late at night during January; (2) the vessel was moored with a stationary anchor light near some willow trees with no apparent ship-to-shore unloading equipment; and *10 (3) as the vessel was approached and prior to boarding, two men jumped overboard into dark, cold water, and a third man scurried toward the pilot house after the Coast Guard boarding announcement. We find these facts created a reasonable suspicion which justified the initial investigatory boarding of the vessel. After the vessel was boarded, the Customs agents immediately smelled marijuana and at that time had probable cause to conduct the warrant-less search. U. S. v. Serrano, 607 F.2d 1148 (11th Cir.); U. S. v. Kleinschmidt, 596 F.2d 133 (5th Cir. 1959); U. S. v. Erwin, 602 F.2d 1183 (5th Cir.)[4].
B. Coast Guard Participation
Coast Guard authority comes from 14 U.S.C. § 89(a)[5]. The U.S. Fifth Circuit, en banc, in U. S. v. Warren, 578 F.2d 1058 (1978), upheld the constitutionality of this statute; and there can be no argument over the fact that the Coast Guard has plenary authority to board a vessel beyond the twelve-mile limit without probable cause or any particular suspicion.
CONCLUSION
Under the facts, we hold that the Plaque-mines Parish deputies and the Customs agents, independently or in concert, had probable cause to conduct this warrantless search of the AQUARIAN SEA. The search was reasonable under the facts, beginning with the surveillance near Mothe’s Funeral Home, and ending with the detection of marijuana odor when the vessel was boarded. The Coast Guard needed no probable cause to board the ship for a document search. The motions to suppress were properly denied, and the defendants’ convictions and sentences are affirmed.
AFFIRMED.
LEMMON, J., concurs.

 Judges Melvin A. Shortess, Burrell J. Carter, and Felix H. Savoie, Jr., of the First Circuit Court of Appeal participated in this decision as associate justices ad hoc, joined by Associate Justices Dennis, Blanche, Watson, and Lem-mon.

. This same constitutional right is found in Louisiana trader Article 1, Section 5, of the Louisiana Constitution.

. The time frame is between 12:00 and 1:00 a. m. during the month of January.

. “Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti-Smuggling Act, or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.”

. It is well settled that detection of marijuana odor furnished probable cause for a warrant-less search of a vessel on inland waters or on the high seas subject to United States jurisdiction.

. “The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship’s documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty, such vessel or such merchandise, or both, shall be seized.”