592 So.2d 254 (1991)
STATE of Florida, Appellant,
v.
Matthew PETRO, Appellee.
No. 90-02442.
District Court of Appeal of Florida, Second District.
September 13, 1991.
Rehearing Denied October 31, 1991.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol M. Dittmar, Asst. Atty. Gen., Tampa, for appellant.
J. Andrew Press, Clearwater, for appellee.
CAMPBELL, Judge.
The state appeals the dismissal of one count of an amended information which charged appellee, Matthew Petro, with conspiring to traffic in cocaine. We reverse. The night before the trial was scheduled the state received service of a motion to dismiss by appellee which, in its essential part, alleged:
As is set more fully in the Memorandum of Law in support of the instant Motion to Dismiss incorporated herein by reference, the above facts and circumstances reveal government misconduct by the manufacturing of crime by an informant in violation of Article I § 9 of the Florida Constitution ensuring the right to due process.
Over the state's objections as to the timeliness of appellee's motion, the trial judge granted the motion finding and holding as follows:
That the confidential informant, Michael Lamb, was improperly supervised and permitted to initiate and negotiate the cocaine transaction which forms the basis of the instant conspiracy charge by choosing the Defendant's alleged coconspirator, Earnest Weaver, as his target. Lamb undertook these activities while awaiting sentencing on a federal drug smuggling conviction for which he was facing a significant period of incarceration.
Based upon the foregoing, this Court finds as a matter of law under the objective view of entrapment that the Due Process Clause of the Florida Constitution, Article I, Section 9, was violated by this scenario of governmental misconduct *255 necessitating the dismissal of the conspiracy to traffic in cocaine charge against the Defendant. State v. Glosson, 462 So.2d 1082 (Fla. 1985); State v. Embry, [563 So.2d 147] 15 FLW D1500 (2 DCA June 8, 1990); State v. Anders, 560 So.2d 288 (4 DCA 1990); Hunter v. State, 531 So.2d 239 (4 DCA 1988).
Many recent cases have employed language that purports to maintain a distinction between: (1) "[O]bjective" entrapment; and (2) conduct of law enforcement officers that is so outrageous that constitutional due process principles bar the use of judicial process to obtain a conviction. We are persuaded that such a distinction is, in most cases, a distinction without a substantial difference, particularly so in regard to the results reached.[1]See Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985); State v. Glosson, 462 So.2d 1082 (Fla. 1985). It is obvious that the trial judge merged the two parallel theories in this case and, for the purposes of this opinion, it is probably fruitless to attempt to differentiate the two concepts, if in fact a difference exists. Suffice it to observe that the misconduct of law enforcement agents that as a matter of law can be held to be so outrageous as to amount to a due process violation of a defendant's rights will always equate with "objective" entrapment as that term has been used and understood by our courts. See Cruz.
It is not so certain, on the other hand, that all cases which might be said to constitute "objective" entrapment will always necessarily equate with a deprivation of a defendant's constitutional due process rights. In any event, under the facts and circumstances of this case, we are persuaded that neither principle applies so as to warrant the dismissal of the charge against appellee.
At the evidentiary hearing on appellee's motion to dismiss, numerous facts involving appellee's involvement with law enforcement and a confidential informant were developed. Those facts show that Sergeant Robert Fletcher of the Pinellas County Sheriff's Office (PCSO) first met with a confidential informant named Michael Lamb in mid-June 1989. Lamb had been arrested by United States Customs and was assisting the Georgia Bureau of Investigation (GBI) with an investigation they were conducting at that time. Lamb had indicated to GBI that he had contact with an individual named Earnest Weaver, who would buy cocaine in kilo amounts. Fletcher was to act as a local Florida contact while Lamb worked with GBI trying to arrange a deal bringing drugs into Georgia.
Sometime around the end of June, GBI pulled out of the investigation. Fletcher then checked into Weaver's background to determine if PCSO wanted to continue the investigation and learned that Weaver had been arrested by the Largo Police Department for trafficking, and had other prior contacts with law enforcement. It was only after Weaver was identified as a known dealer in the Pinellas County drug trade that Fletcher, on behalf of PCSO, decided to use Lamb as a confidential informant in regard to Weaver. This relationship was conducted pursuant to certain specific *256 rules and regulations by which Lamb was required to abide.
At the time PCSO took over, there were no specific plans for an exchange of money or drugs involving Lamb and Weaver. Lamb was instructed by Fletcher not to have any unsupervised contact with Weaver or other parties involved, but was to come to the sheriff's office and use their phone so all of the conversations could be monitored and recorded.
Lamb called Weaver at his home on July 12, from the sheriff's office. It was determined that Weaver had the money, and he had a source named Matt (appellee) in Pasco County that he referred to as his money man. Weaver was to buy one kilo of cocaine at first, and then four more kilos, hoping to establish a steady relationship. On the 13th, Weaver was called at home and indicated he was going up to Pasco County. Lamb and Fletcher later got a beep from Weaver's wife giving them a number to call in Pasco County. They called and arranged to meet Weaver and the other alleged coconspirators. Fletcher posed as Lamb's partner in selling the cocaine. Appellee was introduced as "Matt," Weaver's money man. Law enforcement was present and monitored the transaction at all times, culminating in the arrest of appellee and his alleged coconspirators.
Lamb had been advised that in exchange for his assistance, PCSO would draft a letter prior to his federal sentencing on his preexisting federal charges indicating what, if any, cooperation Lamb had provided. Such a letter was in fact forwarded to the U.S. attorney's office, stating that Lamb had been involved in a case that led to the arrest of four individuals. Fletcher was aware that Lamb hoped for lenient treatment by the federal court based on his assistance and knew that his federal sentencing date had been postponed while he worked on this as well as several other federal investigations. Other than the promised letter, Lamb was under no specific agreement with PCSO or any other authorities about this particular case. Fletcher understood that Lamb had been facing twenty-two years under the federal sentencing guidelines on his federal conviction, but actually received a sentence of nineteen years and seventeen months as a result of testifying against his codefendants in the case in which customs originally arrested him.
Earnest Weaver also testified at the evidentiary hearing on appellee's motion to dismiss. Weaver had an agreement with a man by the name of Olivieri and appellee to purchase drugs. He talked with Olivieri and appellee several times, getting the money together, and then made a deal with Lamb on the other end for the cocaine. He testified that he was never subjected to any coercion or pressure to go forward with the deal from anyone, but wanted to carry out the agreement in order to make money. He had known Lamb years earlier in the construction business, and knew that Lamb was into drugs, but had never had any dealings of this nature with him. Weaver was the individual who handled all of the negotiations leading to the transaction for which appellee was arrested, and was always present when the deal was discussed.
The last witness at the hearing was Lamb. He testified that after being arrested by United States Customs on the federal charges, he was moved up to Georgia where he faced a smuggling charge. He was released on bond and spoke with GBI before returning to his home in Clearwater. When back in Clearwater, he called Ken Olivieri, because he had worked with Olivieri in the past and Olivieri had made him aware that he could deal in large quantities of marijuana and cocaine. He let Olivieri know that drugs were available and, through Olivieri, Lamb was put in touch with Earnest Weaver. Prior to contacting Olivieri, Lamb had advised GBI that Olivieri had previously made statements to Lamb about being able to unload drugs.
Weaver indicated to Lamb that he had a market and would be interested in buying cocaine. Lamb thereafter kept GBI advised as to his contacts with Olivieri and Weaver, and only stopped appraising GBI when PCSO took over the investigation. After Lamb signed up as an informant with PCSO, Fletcher told him not to have any *257 unsupervised contact with Weaver. The subsequent contacts they had were recorded.
Lamb stated that he only negotiated with Weaver and he did not know the appellee in this case or the other alleged coconspirators. The only deal he had with any agency on any case was his plea agreement in his federal smuggling case, wherein he pled and testified against his codefendants, and received a sentence in the guidelines range below the recommended sentence. He was never paid for his assistance from any agency, except for $100 that GBI sent to cover expenses, including the cost of a tape recorder. However, he recognized that his assistance "wouldn't hurt" his chances of getting a reduced federal sentence. There was no agreement whereby Lamb was promised that he would receive a reduced sentence in return for his cooperation. Glosson and State v. Embry, 563 So.2d 147 (Fla. 2d DCA 1990), therefore, do not apply.
After hearing the evidence and arguments of counsel, the court below found that the government took impermissible action in allowing an unsupervised informant to select his own target and handle his own negotiations. Those conclusions are not supported by the evidence in regard to the charges against appellee which were developed after PCSO began supervising Lamb. The court specifically noted that once Sgt. Fletcher took over the investigation, supervision was adequate and no due process violations were committed. However, the court believed that the initial improprieties by GBI tainted the investigation and could not be cured by Fletcher's involvement. The court dismissed Count I of the information, reserving ruling on the other counts, specifically finding that Lamb was improperly supervised and permitted to initiate and negotiate the transaction by choosing his own target, Earnest Weaver, while awaiting sentencing on a federal drug conviction for which he faced a significant period of incarceration. Even if that were a correct analysis of the facts, Weaver was investigated and cleared as a proper subject of investigation by the PCSO after they began supervision of Lamb, and it was Weaver not Lamb who brought appellee into the transaction.
This case then is controlled by our decision in State v. Garcia, 528 So.2d 76 (Fla. 2d DCA), rev. denied, 536 So.2d 244 (Fla. 1988), where we held that entrapment, even "objective" entrapment, is not a defense when the criminal offense is vicariously induced by a private citizen who is not a government agent. That same principle applies whether we are concerned with traditional "objective" entrapment issues or with the constitutional due process violations by government authorities of a defendant's rights. If the "objective" entrapment or constitutional due process violations are directed toward a first party who then involves a second party who has not been personally subjected to such violations, the violations directed toward the first party afford no defense to the second party. Since Lamb only acted in regard to appellee through Weaver, appellee's entrapment or inducement to commit the offense was a result of Weaver's actions and not Lamb's.
We reverse and remand for reinstatement of the charges.
SCHOONOVER, C.J., and SCHEB, J., concur.
NOTES
[1] This opinion was written before publication of State v. Hunter, 586 So.2d 319 (Fla. 1991), but we conclude that Hunter is not of substantial assistance in resolving the apparent confusion created by those who would attempt to distinguish the due process defense and objective entrapment. For instance, the majority in Hunter says: "We agree and hold that the district court should have decided this appeal on the entrapment issue rather than under Glosson." 586 So.2d at 320-322. On the other hand, the majority also states: "By focusing on police conduct, this objective entrapment standard includes due process considerations." 586 So.2d at 322. Justice Kogan then, in his dissent, states: "Thus, although I agree that both this case and Glosson properly are decided based on Florida due process concerns, I disagree with that part of the majority analysis suggesting that Glosson created a defense distinct from objective entrapment. The two plainly are coextensive." 586 So.2d at 322.