DAUKSCH, Judge.
This is an appeal from an order granting appellee Michael Adams’ motion to dismiss, pursuant to Rule 3.190(b), Florida Rules of Criminal Procedure. The trial court found that appellee’s due process rights had been violated as the result of the Kissimmee Police Department entering into a substantial assistance agreement with one Kelley Jo Easterling. We reverse.
On November 24, 1991, appellee was charged with a violation of section 893.135, Florida Statutes (1989), knowingly selling, delivering or possessing more than twenty-eight grams but less than 200 grams of a mixture containing methamphetamine and ephedrine, a substance controlled by section 893.03(2)(c)3, Florida Statutes (1989).
On February 22, 1991, appellee filed a motion to dismiss pursuant to Rule 3.190(b), Florida Rules of Criminal Procedure, arguing that he was entrapped as a matter of law into selling narcotics and that, therefore, his right to due process of law under the United States and Florida Constitutions had been violated.
At a hearing on the motion, Easterling, who had been previously arrested and charged with the offense of trafficking in cocaine, testified that she entered into a substantial assistance agreement with the Kissimmee Police Department. This agreement was described by the officer who arrested Easterling as being that in return for “her providing me with ... three ... similar trafficking narcotic cases,” the officer would request the State Attorney's Office to change Easterling’s charge from trafficking to possession.
Easterling testified that she first met appellee Michael Adams through her boyfriend Danny Sly and his friend Mark Hol-lecker. Easterling testified that Hollecker bought and sold drugs. During a trip to Lakeland with Sly and Hollecker to meet Adams at a barbecue, Easterling testified the three went back to Adams’ house. Sly told Adams that Easterling had the money, and Adams told them he could get methamphetamine. Adams was offered “an extra couple hundred bucks” to bring the drugs to Kissimmee.
*1303 Appellee Adams testified that he had known Mark Hollecker and his family about twenty years and that he met Sly three or four years before when he had moved to Florida. Adams testified he had used drugs including marijuana and cocaine with Hollecker before. He was questioned:
Q. Was this your only involvement with Mr. Hollecker concerning the use or sale of drugs?
A. I’m not sure. You talking about this time?
Q. Any time in the past?
A. No. They came to my apartment in Lakeland and I have gone and scored drugs and used them before. We went to a couple of concerts.
Adams testified that his involvement with this case began when he received a message on his answering machine from Hol-lecker. Hollecker informed Adams that Hollecker needed an ounce of cocaine to make $100 from “[a] good friend of his.” Adams testified he told Hollecker “I would try to do it, but I had to have a gram and a-half for my trouble.” Adams indicated that he told Hollecker he could not get cocaine, but could get methamphetamine, and wanted an ounce for himself because he was addicted to the substance.
Adams testified Hollecker suggested the sale take place in Kissimmee rather than Lakeland. Easterling was present in Adams’s Lakeland apartment during the conversations, but when asked what persuaded him to deliver the narcotics to East-erling, Adams responded, “Nothing persuaded me to Kelley Easterling. I was supposed to deliver them to Mark Hollecker.” Adams testified he was arrested when he told Easterling he had the contraband on his person, when he arrived at the Seven-Eleven store in Kissimmee where they had agreed to meet. He further testified that while she was in Lakeland, he didn’t believe he “had twenty words” with Easterling..
The trial court entered an order granting appellee’s motion to dismiss, concluding that the “action or non-action by law enforcement permitted Ms. Easterling and her cohorts to manufacture a crime in this case. This action by agents of law enforcement clearly [violates] the due process provisions of both the State and Federal Constitutions.” We disagree.
In ruling that appellee’s due process rights were violated by the actions of East-erling, Sly and Hollecker in getting appel-lee to obtain methamphetamine for them and deliver it to Kissimmee, the trial court relied primarily on State v. Glosson, 462 So.2d 1082 (Fla.1985) and Krajewski v. State, 587 So.2d 1175 (Fla. 4th DCA), quashed, 589 So.2d 254 (Fla.1991), on remand, 597 So.2d 814 (Fla. 4th DCA 1992). The Glosson court held that based upon the due process provision of Article I, Section 9 of the Florida Constitution, governmental misconduct which violates the constitutional due process rights of a defendant, regardless of that defendant’s predisposition, requires the dismissal of criminal charges. Thus, the court ruled
that a trial court may properly dismiss criminal charges for constitutional due process violations in cases where an informant stands to gain a contingent fee conditioned on cooperation and testimony in the criminal prosecution when that testimony is critical to a successful prosecution.
Glosson, 462 So.2d at 1085. In Krajewski v. State, 587 So.2d 1175, 1184 (Fla. 4th DCA 1991), the court certified the following question:
DOES THE PERFORMANCE OF AN AGREEMENT UNDER SECTION 893.-135(4) AS AMENDED, WHEREBY AN INFORMER WILL RECEIVE A SUBSTANTIALLY REDUCED SENTENCE IN EXCHANGE FOR SETTING UP NEW DRUG DEALS AND TESTIFYING, CONSTITUTE A PER SE VIOLATION OF THE HOLDING IN STATE V. GLOSSON, 462 So.2d 1082 (FLA.1985) AS TO AN INDIVIDUAL ENSNARED BY THAT PERFORMANCE?
The supreme court answered this question in the negative based on its holding in *1304 State v. Hunter, 586 So.2d 319 (Fla.1991). State v. Krajewski, 589 So.2d 254 (Fla.1991).[1]
We find this case governed by that portion of the Hunter opinion which holds that “[w]hen a middleman, not a state agent, induces another person to engage in a crime, entrapment is not an available defense.” State v. Hunter, 586 So.2d at 322, citing to State v. Garcia, 528 So.2d 76 (Fla. 2d DCA), rev. den., 536 So.2d 244 (Fla.1988); Acosta v. State, 411 So.2d 9 (Fla. 3d DCA 1985); State v. Perez, 438 So.2d 436 (Fla. 3d DCA 1983). See also State v. Petro, 592 So.2d 254 (Fla. 2d DCA 1991); State v. Brugman, 588 So.2d 279 (Fla. 2d DCA 1991). In the instant case, it was Hollecker who made the initial contact with appellee. As with one of the Hunter defendants, appellee’s involvement was “wholly voluntary even though his motive may have been benevolent.” Hunter, 586 So.2d at 322. (The trial court found appel-lee “in the final analysis was just trying to do a favor for a friend.”). Appellee’s own testimony establishes that he had “minimal” contacts with Easterling, another important factor in Hunter. We thus agree with the state that appellee should not have been allowed to raise his entrapment or outrageous conduct and due process claims below. Appellee was not entitled to assert an entrapment defense as a matter of law, because he was induced into bringing the narcotics into Kissimmee by Mark Hollecker, not Kelley Easterling.
We reverse the order of the trial court dismissing the information and remand the cause for trial.
REVERSED and REMANDED.
GRIFFIN, J., concurs.
COWART, J., dissents, with opinion.

. Two other substantial assistance cases relied upon by appellee below were treated similarly. State v. Anders, 560 So.2d 288 (Fla. 4th DCA 1990), vacated, 587 So.2d 455 (Fla.1991); State v. Embry, 563 So.2d 147 (Fla. 2d DCA 1990), quashed, 588 So.2d 995 (Fla.1991), on remand, 593 So.2d 327 (Fla. 4th DCA 1992).