STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 1624

STATE OF LOUISIANA

VERSUS

RICKEY GUIDRY

Judgment Rendered: _____OCT 2 1 2020_____

* * * * *

On Appeal from the
Thirty-Second Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Trial Court No.716,685

The Honorable Juan W. Pickett, Judge Presiding

* * * * *

<table>
<tr><td>Joseph L. Waitz, Jr.<br>District Attorney<br>Ellen Daigle Doskey<br>J. Christopher Erny<br>Assistant District Attorneys<br>Houma, Louisiana</td><td>Attorneys for Appellee<br>State of Louisiana</td></tr>
<tr><td>Arthur A. Lemann, III<br>New Orleans, Louisiana</td><td>Attorney for Defendant/Appellant<br>Rickey J. Guidry</td></tr>
</table>

* * * * *

BEFORE:   HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

Lanier, J., express in part, concurs in part, and assigns reasons

**PENZATO, J.**

Defendant, Rickey Guidry[1], was charged by bill of information with possession of cocaine, a violation of La. R.S. 40:967(C). He pled not guilty. After a trial by jury, defendant was found guilty as charged by a unanimous six-member jury. The trial court adjudicated him a second-felony habitual offender and imposed a term of two-and-a-half years imprisonment at hard labor without benefit of probation or suspension of sentence. Defendant now appeals. For the following reasons, we affirm the conviction and remand to the trial court for resentencing.

## STATEMENT OF FACTS

On the night of December 1, 2015, officers of the Houma Police Department ("HPD") Narcotics Task Force were on patrol in what police considered a "high drug and high crime area." Two narcotics agents, Richard Hunter and Corey Veal, were in an unmarked black GMC Sierra belonging to the HPD. At around 11:10 p.m. Agent Hunter, who was driving, observed a white pickup truck make three turns without using a turn signal. After the third turn, Agent Hunter turned on his blue lights and initiated a traffic stop, something he testified was part of his regular duties on the HPD Narcotics Task Force. Another narcotics agent, Corey Duplantis, was a K-9 officer who arrived about a minute later and provided backup for the traffic stop. Lieutenant Jeff Lirette,[2] another K-9 officer, and Officer Mark Brashear arrived soon after Agent Duplantis.

After approaching the truck, Agent Hunter discovered a man, later identified as Garland McKinley, was driving. McKinley was unable to produce a driver's license when asked by Agent Hunter. While Agent Hunter spoke to McKinley, Agent Duplantis approached the passenger side of the truck and spoke to

---

[1] Defendant's name is referenced several different ways in the record: Rickey Guidry, Rickey J. Guidry, and Ricky Guidry.

[2] At the time of this incident, Lieutenant Lirette was a Sergeant, but had been promoted prior to trial.

2

defendant. Agent Hunter then asked McKinley to step out of the truck, and Agent Duplantis requested defendant step out of the truck. During his investigation, Agent Hunter learned McKinley did not own the truck, but that defendant did.

According to Agent Duplantis, defendant told him the two were "just riding around." When defendant exited the vehicle as directed, Agent Duplantis saw "white crumbs" that he suspected to be crack cocaine on the passenger seat. The substance was on the left side of the seat, near the center console and the seat belt buckle. Agent Duplantis described the truck as otherwise "very well kept up." Upon seeing what he suspected to be illegal narcotics, Agent Duplantis retrieved a field drug testing kit from his police vehicle, and the field test indicated the substance to be presumptively cocaine. Conferring, the officers discovered statements given by McKinley and defendant were inconsistent. The narcotic agents asked for consent to search the vehicle, which McKinley granted and defendant, who owned the vehicle, refused. On defendant's refusal, Lieutenant Lirette retrieved his K-9 "Gunner" and "ran" him around the truck in an attempt to discover any other possible narcotics. The dog alerted officers to the presence of a narcotics odor emanating from the vehicle. Officers began to search the interior of the truck. Moving the front passenger seat revealed more pieces of crack cocaine on the passenger-side, back seat floorboard. After being arrested, defendant indicated to the officers that he was upset he was being charged "for kibbles and bits" and that he would not have been so charged in Lafourche Parish. Defendant did not deny the cocaine was his. Agent Hunter explained to the jury that it was his belief that based on where the cocaine was located and the condition it was in, defendant attempted to discard the cocaine after the traffic stop was initiated.

McKinley was issued citations for failing to stop at a stop sign and driving without a driver's license. He was not charged with possession of cocaine due to the cocaine being discovered near the passenger seat. McKinley was permitted to

drive off with defendant's truck, at defendant's request, at the conclusion of the incident.

The substance obtained from defendant's vehicle was later forensically determined to be 0.1 grams of cocaine. Lieutenant Lirette testified it was not uncommon to find and prosecute possession of that amount. No drug paraphernalia was discovered in the truck.

## ASSIGNMENT OF ERROR #1: UNCONSTUTIONALITY OF STATUTE

In assignment of error number one, defendant contends La. R.S. 40:967(C) is unconstitutional as applied to his case. Though he concedes that the jurisprudence in Louisiana is that a conviction "may rest upon possession of any amount of the drug[,]"[3] he also contends that Louisiana should adopt an admittedly minority view that "in order to be criminal, the amount possessed must be usable."[4] Defendant specifies that he is not arguing on sufficiency grounds, but the "due process constitutional implications" of the application of the statute to the facts of this case because it is "inconsistent with the proper legislative goals." Defendant challenged the constitutionality of the statute as applied to his case in a pre-trial motion to quash. The State argues that the possession of any amount of cocaine is a violation of the law, which is long-established precedent within Louisiana.

Louisiana Revised Statutes 40:967(C) requires proof that a defendant knowingly or intentionally possessed a controlled dangerous substance as classified in Schedule II. A conviction for possession of a controlled dangerous substance may rest on the possession of mere traces or residue of the substance, even absent admissions by defendant, which might constitute guilty knowledge. *State v. Ferguson*, 2015-0427 (La. App. 1st Cir. 9/18/15), 181 So.3d 120, 130, *writ denied*, 2015-1919 (La. 11/18/16), 210 So.3d 282; *see also State v. Wooten*, 49,710

---

[3] Defendant cites *State v. Sylvia*, 2001-1406 (La. 4/9/03), 845 So.2d 358, 361.
[4] Defendant cites Seth Davidson, Criminal Liability for Possession of Nonusable Amounts of Controlled Substances, 77 Colum. L. Rev. 596, 621 (1977).

(La. App. 2d Cir. 4/15/15), 164 So.3d 937, 943; *State v. Leblanc*, 2004-1032 (La. App. 1st Cir. 12/17/04), 897 So.2d 736, 739-40, *writ denied*, 2005-0150 (La. 4/29/05), 901 So.2d 1063, *cert. denied*, 546 U.S. 905, 126 S.Ct. 254, 163 L.Ed.2d 231 (2005) (finding evidence that defendant possessed a crack pipe with cocaine residue was sufficient to support defendant's conviction for possession of cocaine); *cf. State v. Ganier*, 94-2582 (La. App. 4th Cir. 8/23/95), 660 So.2d 928, 931-33, *writ denied*, 95-2333 (La. 1/26/96), 666 So.2d 657 (statute prohibiting a person from knowingly or intentionally possessing "cocaine or a mixture or substance containing a detectable amount of cocaine" not unconstitutionally vague because it "describes the unlawful conduct, possession of cocaine, with sufficient clarity that persons of reasonable intelligence are capable of discerning its meaning and conforming their conduct accordingly.").

Defendant does not contest the fact that crack cocaine was found in his truck in his immediate vicinity. Defendant also does not cite any case law, Louisiana or otherwise, in support of his position, nor does he provide any support for his contention that the legislative intent behind La. R.S. 40:967(C) was not to apply the statute to a situation like that of defendant. The case defendant cites, *State v. Sylvia*, 2001-1406 (La. 4/9/03), 845 So.2d 358, was decided in 2003. In the intervening seventeen years, the Legislature has declined to clarify further its intent regarding trace amounts. Further, though defendant argues the amount of crack cocaine he possessed was "worthless," it was still in his possession at the time of the traffic stop. Without more, this claim is meritless.

## ASSIGNMENT OF ERROR #2: DENIAL OF MOTION TO SUPPRESS

In his second assignment of error, defendant argues the trial court erred when it denied his motion to suppress the evidence obtained from the search that followed the traffic stop. Defendant argues that the traffic stop was a pretext for a

narcotics investigation that was prolonged beyond the time period necessary to investigate the alleged traffic violations. Defendant contends that the traffic stop was purposefully delayed twice as long as the seizure found unreasonable in *Rodriguez v. United States*, 575 U.S. 348, 355-56, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492 (2015) (police may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff). In response, the State notes the probable cause to search defendant's vehicle developed contemporaneously with the investigation of the traffic stop and that the case is distinguishable from *Rodriguez*.

As an initial matter, a warrantless search is *per se* unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. *State v. Cox*, 2018-0769 (La. App. 1st Cir. 2/22/19), 272 So.3d 597, 602, *writ denied*, 2019-0604 (La. 9/17/19), 278 So.3d 973, and *cert. denied*, ___ U.S. ___, 140 S.Ct. 1279, 206 L.Ed.2d 262 (2020). A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. *State v. Jarrell*, 2007-1720 (La. App. 1st Cir. 9/12/08), 994 So.2d 620, 625. Correspondingly, when a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion, i.e., unless such ruling is not supported by the evidence. However, a trial court's legal findings are subject to a *de novo* standard of review. *Cox*, 272 So.3d at 602. In determining whether the ruling on defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. *State v. Chopin*, 372 So.2d 1222, 1223 n.2 (La. 1979); *State v. Jefferson*, 2018-0083 (La. App. 1st Cir. 9/24/18), 261 So.3d 793, 799, *writ denied*, 2018-1671 (La. 2/25/19), 266 So.3d 294.

6

In the hearing on defendant's motion to suppress, the State presented the testimonies of Agents Hunter and Duplantis. The suppression hearing testimony tracked their statements at trial, namely that: Agent Hunter and another agent were on a "criminal patrol" in an unmarked car during the late evening hours one night in December 2015; a white pickup truck made three turns without using a turn signal; Agent Hunter contacted the driver who he later learned was McKinley; other units on patrol, including Agent Duplantis, responded to provide backup very soon after the stop was initiated; Agent Hunter learned McKinley did not have a driver's license; defendant was the owner of the truck; defendant and McKinley had conflicting stories as to the nature of their drive; when the subjects exited the vehicle, Agent Duplantis saw suspected crack cocaine in plain view near where defendant was seated; a field test indicated the substance was suspected to be cocaine; a K-9 alerted to the presence of narcotics soon thereafter; and additional drugs were found under the seat.

At the suppression hearing, Agent Hunter testified that the time between the initial spotting of the traffic violation to when defendant was arrested was seven minutes. Also, at the suppression hearing, Agent Hunter said McKinley and defendant were ordered out of the vehicle rather than being asked, as Agent Hunter testified at trial. Agent Duplantis testified at the hearing that Agent Hunter asked him to ask defendant to exit, and said defendant got out voluntarily.

Defendant contends the time between the stop and the arrest was actually fourteen minutes, and he attempted to establish that fact with time stamps and a transcript defense counsel made from police dispatch recordings. The trial court did not accept defendant's assertion or evidence and denied the motion to suppress. The trial court found the instant facts distinguishable from *Rodriguez*, because in the instant case the probable cause to search defendant's vehicle was obtained during the traffic stop. Moreover, the court found the time between stop and arrest

irrelevant, because Agent Duplantis's plain view of the cocaine occurred before the traffic stop was concluded.

As an initial matter, "[a]lthough they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants." *State v. Waters*, 2000-0356 (La. 3/12/01), 780 So.2d 1053, 1056 (per curiam); *see Whren v. United States*, 517 U.S. 806, 817-19, 116 S.Ct. 1769, 1776-77, 135 L.Ed.2d 89 (1996). Once stopped, an officer may order the driver, as well as the passengers, out of a vehicle pending completion of the stop. *Maryland v. Wilson*, 519 U.S. 408, 414-15, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997); *State v. Benoit*, 2001-2712 (La. 5/14/02), 817 So.2d 11, 15; *see also Pennsylvania v. Mimms*, 434 U.S. 106, 110-11, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977) (per curiam); *State v. Matthews*, 2015-1281 (La. App. 1st Cir. 2/26/16), 191 So.3d 1080, 1084, *writ not considered*, 2016-1182 (La. 11/15/16), 209 So.3d 787 (while ordering passengers out of cars may be a slight inconvenience, it is not a serious intrusion upon privacy interests). Defendant does not contest that Agent Hunter initiated a legitimate traffic stop, only that it was purely pretextual. Regardless, it is of no moment where there is no dispute as to the underlying traffic offense.

The plain view doctrine renders a warrantless search reasonable: 1) if the police officer is lawfully in the place from which he views the object; 2) where the object's incriminating character is immediately apparent; and 3) the officer has a lawful right of access to the object. *State v. Gray*, 2013-1326 (La. 6/28/13), 122 So.3d 531, 533 (per curiam) (*citing Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)); *see also State v. Miguel*, 2018-0711 (La. 1/30/19), 263 So.3d 873, 874 (per curiam). "[I]mmediately apparent" requires no more than "probable cause to associate the property with criminal

activity." *See Texas v. Brown*, 460 U.S. 730, 741-42, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (*quoting Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)); *State v. DuPont*, 2014-0497 (La. App. 1st Cir. 11/7/14), 2014 WL 5801488, at *3 (unpublished), *writ denied*, 2014-2595 (La. 9/18/15), 178 So.3d 145, *cert. denied*, ___ U.S. ___, 136 S.Ct. 985, 194 L.Ed.2d 8 (2016). In considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer "that might well elude an untrained person." *State v. Huntley*, 97-0965 (La. 3/13/98), 708 So.2d 1048, 1049 (per curiam) (*quoting United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); *State v. Harris*, 2011-0779 (La. App. 1st Cir. 11/9/11), 79 So.3d 1037, 1041.

Upon receiving the presumptive positive field test of the suspected crack cocaine, the officers thereby acquired probable cause to search the vehicle's interior for the contraband, *see State v. Delgado*, 411 So.2d 7, 10 (La. 1982), and exigent circumstances arising from the stop of the truck on the open road excused the warrant requirement. *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (per curiam); *State v. Waters*, 2000-0356 (La. 3/12/01), 780 So.2d 1053, 1058 (per curiam); *see also State v. Barnes*, 2012-0615 (La. App. 1st Cir. 11/2/12), 2012 WL 5387692, at *3 (unpublished), *writ denied*, 2013-0634 (La. 8/30/13), 120 So.3d 264 (under the automobile exception to the warrant requirement, a police officer can search a vehicle based on probable cause alone).

Finally, even assuming *arguendo* that the positive field test was not by itself sufficient to create probable cause to search the vehicle without a warrant, the fact that the officers nearly immediately received an indication of the presence of narcotics from a drug dog was. Testimony adduced at the hearing and trial indicated the traffic stop had not concluded before the suspected crack cocaine was

9

observed in plain sight. As soon as the cocaine was observed, the traffic stop necessarily became a more involved narcotics investigation, and the *de minimis* delay in retrieving a dog already at the scene, did not prolong it in any way that would implicate the application of the principles of *Rodriguez*. *See Rodriguez*, 575 U.S. at 357, 135 S.Ct. at 1616 (when reviewing the legality of a dog sniff conducted in relation to a traffic stop, the critical question is not whether the dog sniff occurred before or after the officer issued a ticket, but whether conducting the sniff prolonged, or added time to, the stop). When the dog alerted to the additional crack cocaine, the officers gained yet more probable cause to conduct a warrantless search of defendant's vehicle, despite his denial of consent to search. *See State v. Jackson*, 2006-1904 (La. App. 1st Cir. 3/23/07), 960 So.2d 170, 172, *writ denied*, 2007-1026 (La. 11/16/07), 967 So.2d 523 (a canine alert has been held to be sufficient to establish probable cause to obtain a search warrant). This claim is without merit.

### ASSIGNMENT OF ERROR #3: DENIAL OF MOTION TO QUASH

In his third assignment of error, defendant contends the State failed to provide bodycam recordings despite a Motion for Discovery filed on April 26, 2016, a supplemental Motion for Discovery filed on June 27, 2016, and the trial court's order to produce the bodycam recordings following the hearing on defendant's Motion to Suppress held on January 16, 2018.[5] Defendant filed a Motion to Quash on March 5, 2018, after being notified by the State on March 1, 2018, that the video no longer existed. Defendant argues the missing video is exculpatory because it could possibly impeach the State's established timeline of the investigation and when officers ordered defendant from the vehicle. In defendant's view, if the traffic stop was completed before the exit order was issued, the crack cocaine would never have been seen in plain view, and the

---

[5] Defendant's first request for bodycam video was made in open court on January 16, 2018.

extension of the traffic stop to permit a dog sniff would have rendered the evidence suppressible. The State contends that evidence was adduced that the video was preserved for six months following the traffic stop, but that it was not requested before its routine deletion. Further, the State argues a Motion to Quash was not the proper procedural vehicle to litigate defendant's claim.

The trial court denied the motion after determining the failure to produce the video was not in bad faith and that the motion was not based on any of the statutory grounds provided by law. During discussion of the issue after *voir dire*,[6] the State explained that if preservation was not previously requested the video would have been deleted after six months of its creation and that defense counsel did not enroll in the case[7] until just after that retention deadline. Additionally, the prosecutor stated that he asked the narcotics commander with the HPD about the video. The commander expressed doubt as to whether the video ever existed, and further said that if the video did exist, HPD no longer had it nor did it have any record of ever possessing such a video. Agents Hunter and Duplantis were questioned regarding the video during cross-examination by the defense.

As an initial matter, there is nothing in the testimony adduced at trial or at the suppression hearing that would suggest the traffic stop was completed, i.e., a citation issued to McKinley, before the command to exit the vehicle was given. As noted previously, the agents had a right to order the occupants from the vehicle during the conduct of the traffic stop. While defense counsel argues that the order of events were described inconsistently in the hearing and at trial, the testimony does not bear out his claim. Thus, the video evidence defendant sought can best be described as "potentially useful."

---

[6] The trial court denied defendant's request for an evidentiary hearing on the matter. However, the State went on record with the information regarding the video known to it at the time.

[7] Defendant's trial counsel did not enroll until June 20, 2016.

Due process requires that the State provide a defendant with any exculpatory evidence in its possession, which is material to defendant's guilt or punishment, regardless of the good faith or bad faith of the prosecutor. *Ferguson*, 181 So.3d at 133-34, (*citing Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963)). However, absent a showing of bad faith, the failure to preserve "potentially useful" evidence does not constitute a denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); *State v. Hines*, 2011-2082 (La. App. 1st Cir. 6/8/12), 2012 WL 2061513, at *3. "There simply is no absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *State v. Dyer*, 2012-1166 (La. 10/26/12), 101 So.3d 38, 41 (per curiam); *see also California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413 (1984) (good faith execution of normal practices leading to the pre-trial destruction of evidence, when not reflective of official animus, does not violate due process); *State v. Lindsey*, 543 So.2d 886, 891 (La. 1989), *cert. denied*, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990) (*citing Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337 and *Trombetta*, 467 U.S. at 488, 104 S.Ct. at 2533). While the fact finder's credibility determinations likely would have been aided to some degree by the availability of the officers' bodycam videos, as defendant failed to demonstrate bad faith in the loss of the video recordings, assuming *arguendo* they existed, defendant does not show he is entitled to relief. This claim is without merit.

**ASSIGNMENT OF ERROR #4: DENIAL OF MOTION FOR MISTRIAL**

In his fourth assignment of error, defendant contends the trial court erred when it did not grant him a mistrial after the prosecutor twice made hyperbolic reference to defendant conceivably throwing five kilograms of cocaine out of the truck's window before being stopped. Defendant argues he suffered undue prejudice when the State made reference to "other crimes that were not admitted

into evidence." (Defendant's brief at p. 21). The State posits the statement was clearly not meant seriously, and the prosecutor acknowledged there was no evidence to support it.

Following the defense's cross-examination of Agent Duplantis, wherein the officer was asked to acknowledge a series of circumstances for which no evidence had been presented and of which the officer had no knowledge, on redirect, the prosecutor asked Agent Duplantis whether he saw "those five kilos of cocaine that [defendant] through [sic] out the window?" Defense counsel entered no objection at this point and the witness replied "No." Thereafter the prosecutor asked, "No. But, it could have happened; right?" At this point, the defense counsel objected, and the trial court sustained the objection. Defense counsel did not call for a mistrial. During the cross-examination of Lieutenant Lirette, defense counsel again asked several questions inquiring whether the lieutenant was aware of several putative facts for which no evidence had been submitted. On redirect, the prosecutor asked Lieutenant Lirette if he had seen "the five kilos that he through [sic] out the window?" After the prosecutor made the second "five kilos" remark, defendant objected and requested a mistrial, which the trial court denied. Immediately thereafter, the State clarified with Lieutenant Lirette that there was no evidence supporting the statement that defendant had more drugs, in addition to several other implied facts at the heart of the questions asked by defense counsel during cross-examinations of both Lieutenant Lirette and Agent Duplantis.

In pertinent part, La. C.Cr.P. art. 770 provides:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument, refers directly or indirectly to:
>
> * * *
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]

13

Article 770, subsection 2, is not applicable unless the inference clearly constitutes a comment on other crimes committed or alleged to have been committed by defendant. *State v. Rhodes*, 95-54 (La. App. 5th Cir. 6/28/95), 657 So.2d 1373, 1376-77, *writ denied*, 95-2265 (La. 3/14/97), 690 So.2d 28. Here, while arguably improper and certainly ill-advised, this sarcastic remark did not constitute a serious allegation of additional criminal conduct on the part of defendant. *See State v. Byrne*, 483 So.2d 564, 572 (La.), *cert denied*, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986) ("Before an allegedly prejudicial remark requires reversal, this Court must be thoroughly convinced that the jury was influenced by the remark and that it contributed to the verdict."); *State v. Smallwood*, 2009-0086 (La. App. 5th Cir. 7/28/09), 20 So.3d 479, 490-91, *writ denied*, 2009-2020 (La. 9/24/10), 45 So.3d 1065 (prosecutor's remark, "thank goodness [defendant] is no longer baby-sitting because [aggravated rape victim] might be dead by now," did not warrant mistrial as comment was most fairly construed to be sarcastic remark on defendant's testimony as opposed to reference to uncharged crime, and there was no indication that prosecutor's remark so inflamed jury that it influenced jury's verdict); *cf. State v. Jarman*, 445 So.2d 1184, 1187 (La. 1984) (remarks by prosecutor asking police detective whether he had his "pencil and pad because we are going to have some homework to do tonight[,]" though gratuitous and improper, did not result in substantial prejudice to defendant, so that denial of motion for mistrial was not error).

Further, although Article 770 is couched in mandatory terms, providing that a mistrial **shall** be ordered, the jurisprudence holds that the admission of other crimes evidence is subject to the harmless error analysis. *State v. Williams*, 2011-0954 (La. App. 4th Cir. 4/18/12), 96 So.3d 1203, 1208-09, *writ denied*, 2012-1139 (La. 11/2/12), 99 So.3d 662 (*citing State v. Johnson*, 94-1379 (La. 11/27/95), 664

14

So.2d 94, 101-02). The prosecutor's comment was explained following the denial of mistrial and did not contribute to the jury finding defendant guilty. We find that any potential error in the trial court's denial of the motion for mistrial was harmless, and therefore, this assignment of error lacks merit.[8]

### ASSIGNMENTS OF ERROR #5 AND #6: HABITUAL OFFENDER ADJUDICATION AND EXCESSIVE SENTENCE

In these assignments of error, defendant argues that the trial court improperly imposed sentence, despite defendant's attempt to seek the statutory delay, and improperly enhanced his sentence with another conviction for possession of cocaine. The State responds that there was sufficient evidence to convict defendant, and so a habitual offender adjudication was appropriate. Additionally, the State argues the failure to delay sentencing was harmless.

Regarding the habitual offender adjudication, defendant is reurging the claim made in his first assignment of error, to wit: possession of a *de minimis* amount of cocaine does not warrant subjecting defendant to any enhanced penalty under La. R.S. 15:529.1, and that doing so makes any sentence unconstitutionally excessive. However, as with his prior claim, this jurisprudence is clear. The legislature has made possession of any amount of cocaine illegal, and thus equally subject to habitual offender enhancement in subsequent convictions. *Cf. Ferguson*, 181 So.3d at 130. Defendant provides no authority to the contrary.

As to the statutory delay, defendant filed several post-trial motions, the last of which being a Motion for New Trial based on newly discovered evidence on February 8, 2019. A hearing on the motion and sentencing both occurred on April 17, 2019. The trial court erred by sentencing defendant immediately after ruling on defendant's Motion for New Trial. Louisiana Code of Criminal Procedure

---

[8] The defendant argues that the recent case of *State v. Thompson*, 2015-0886 (La. 9/18/17), 233 So.3d 529, 559-61, adopted the *per se* rule in affirming a mistrial under Article 770. However, the supreme court distinguished subsections (1) and (2) of Article 770, and specifically recognized the application of a harmless error analysis in the review of a conviction where inadmissible other crimes evidence is disclosed to a jury, citing *Johnson* as support thereof.

article 873 states that sentence may be imposed immediately if defendant expressly waives the delay provided by the article. Review of the record shows that defendant attempted to invoke the delay mandated by the statute, but his request was denied by the trial court. As the record does not reflect an express waiver by defendant of the delay required by Article 873, and defendant has challenged his sentence on appeal,[9] the sentence must be vacated and the matter remanded for a legally imposed sentence. *See State v. Augustine*, 555 So.2d 1331, 1334 (La. 1990); *State v. Nawadny*, 2018-0428 (La. App. 1st Cir. 11/6/18), 2018 WL 5817282, at *1 (unpublished).[10] Because the case is to be vacated and remanded, we pretermit discussion of the additional arguments raised by defendant in his final assignment of error.

**CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED; SENTENCE VACATED; AND REMANDED FOR RESENTENCING.**

---

[9] In his final assignment of error, defendant also argued that his sentence was not subject to enhancement under La. R.S. 15:529.1 and that the enhanced sentence imposed was excessive.

[10] At the sentencing, defendant requested a continuance following the denial of the motion for new trial. The trial court denied the continuance. A request for a continuance may be construed as a direct assertion of the 24-hour sentencing delay provided for in Article 873. *State v. Austin*, 49,061 (La. App. 2nd Cir. 7/16/14), 146 So.3d 716, 732, *writ denied*, 2014-2323 (La. 9/18/15), 178 So.3d 140 (finding harmless error since the same sentence would have been imposed). Further, the Louisiana Supreme Court has observed that "[a]n implicit waiver ... runs afoul of the plain language of [Article] 873 that requires that the waiver be expressly made." *State v. Kisack*, 2016-0797 (La. 10/18/17), 236 So.3d 1201, 1205, *cert. denied*, —— U.S. ——, 138 S.Ct. 1175, 200 L.Ed.2d 322 (2018).

16

STATE OF LOUISIANA                    2019 KA 1624

VERSUS                                COURT OF APPEAL

RICKEY GUIDRY                         FIRST CIRCUIT

                                      STATE OF LOUISIANA

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

LANIER, J., AGREES IN PART, CONCURS IN PART, AND ASSIGNS REASONS.

I agree with the result reached by the majority as to defendant's conviction and the remand for resentencing. However, I concur with the majority as to the result on the denial of the motion for mistrial.

Louisiana Code of Criminal Procedure article 770(2) provides that, upon motion of a defendant, a mistrial shall be ordered if the judge, district attorney, or a court official makes a remark or comment within the jury or judge's hearing, during the trial or in argument, which directly or indirectly refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. "An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial." La. Code Crim. P. art. 770. Although Article 770 is couched in mandatory terms, it is a "rule for trial procedure." **State v. Johnson**, 94-1379 (La. 11/27/95), 664 So.2d 94, 101. Accordingly, the introduction of inadmissible "other crimes" evidence results in a trial error subject to harmless error analysis on appeal. **State v. Odenbaugh**, 2010-0268 (La. 12/6/11), 82 So.3d 215, 251, cert. denied, 568 U.S.829, 133 S.Ct. 410, 184 L.Ed.2d 51 (2012).

The test for determining whether an error is harmless is whether the verdict actually rendered in this case was surely unattributable to the error. See **Sullivan v. Louisiana**, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). The pertinent inquiry is not whether, in a trial that occurred without the error, a guilty

verdict would surely have been rendered, but whether, the guilty verdict actually rendered in this trial was surely unattributable to the error. *Id.*

In the case before us now, defendant alleged he suffered undue prejudice when the State made reference to "other crimes that were not admitted into evidence." During the trial, the prosecutor asked one of the investigating officers if he had seen "those five kilos of cocaine that [defendant] through [sic] out the window?" The witness replied, "No." The prosecutor then asked, "No. But it could have happened; right?" The witness answered, "I mean, I guess ...." The defense counsel objected, and the trial court sustained the objection.

During redirect of the very next witness, the prosecutor asked another investigating officer the same question, again making reference to "the five kilos that he through [sic] out the window." The defense counsel immediately entered an objection and moved for a mistrial, which the trial court denied.

The majority posits that "while arguably improper and certainly ill-advised, this sarcastic remark did not constitute a serious allegation of additional criminal conduct on the part of defendant." The majority further suggests that it is permissible for the State to clarify a comment that violates Article 770. I disagree. A review of the record in this case reveals that defendant was charged with possession of what ultimately amounted to 0.1 grams of cocaine. No other drug paraphernalia was discovered during the traffic stop and subsequent search of the vehicle. The State's case was based on crumbs, but where did the crumbs come from? The statements made by the prosecutor clearly alluded to not only the possibility that defendant was in possession of a much larger amount of cocaine (La. R.S. 40:967(A), possession with intent to distribute), but also to the possibility that defendant had possibly destroyed evidence in an attempt to avoid being charged with a more serious crime (La. R.S. 14:130.1, obstruction of justice).

In **State v. Murphy**, 2016-0901 (La. App. 1 Cir. 10/28/16), 206 So.3d 219, defendant filed a motion for mistrial based on several comments made by the prosecutor, both during argument and during the trial; statements that defendant alleged evidenced the State's intent to poison the jury. Defendant also argued the State elicited testimony involving inadmissible other crimes evidence. **Murphy**, 206 So.3d at 227-228. On review, this court concluded that the verdicts rendered in the case were unattributable to any error in the admission of inadmissible other crimes evidence, but addressed the prosecutor's conduct as it related to the due process analysis of the case as follows:

> We note that the prosecutor's continuous inappropriate comments and unprofessional conduct after multiple warnings from the trial court were iniquitous and certainly merit reprimand. But, even when the prosecutor's statements and actions are excessive and improper, credit should be given to the good sense and fair-mindedness of the jurors who have seen the evidence and heard the arguments. **State v. Bridgewater**, [2000-1529] (La. 1/15/02), 823 So.2d 877, 902, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003). The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. **State v. Ortiz**, [2011-2799] (La. 1/29/13), 110 So.3d 1029, 1034, cert. denied sub nom, **Ortiz v. Louisiana**, 517 U.S. 827, 134 S.Ct. 174, 187 L.Ed.2d 42 (2013). Consequently, the aim of due process is not punishment of society for the misdeeds of the prosecutor, but avoidance of an unfair trial to the accused. [*Id.*] While a prosecutor should prosecute with "earnestness and vigor" and "may strike hard blows, he is not at liberty to strike foul ones." **State v. Tassin**, [2011-1144] (La. App. 5 Cir. 12/19/13), 129 So.3d 1235, 1249, writs denied, [2014-0284], [2014-0287] (La. 9/19/14), 148 So.3d 950 (quoting **Berger v. United States**, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). The prosecutor's behavior during the trial caused some consternation to the judge and exceeded the limits of proper conduct. The trial judge had to continually admonish the jury.
>
> In this case, there was overwhelming evidence of defendant's guilt, including his own confession; the documentary evidence of hundreds of reprehensible, licentious communications showing his sexual manipulation of a child victim; the victim's testimony; as well as the trial court's repeated admonitions to the jury. Thus, we conclude the drastic remedy of a mistrial was not warranted in this case.

**Murphy**, 206 So.3d at 231-232.

Constrained as we are to follow the jurisprudence on the harmless error analysis, and based on this court's holding in **Murphy**, I agree with the majority that the denial of the mistrial in this case was harmless error. Nonetheless, I must express my concern about the slippery slope that is created when no consequences result from the State's disregard of the Code of Criminal Procedure and a previously sustained objection. If these types of trial errors continue without restraint, then at some point, they will, indeed, become harmful error. I also believe that had the trial court granted the mistrial, this action would have been well within the court's discretion.